UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:08-CV-584-F(3)

| | | |
|---|---|---|
| TUSCAN DOWNS, INC., WALTER SCHNEIDER, and BECKY SCHNEIDER, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | ORDER |
| THE CULINARY SCHOOL OF FORT WORTH, LLC, | ) ) ) ) | |
| Defendant | ) ) | |

This matter is before the court upon a Motion to Dismiss [DE-13] by the Defendant, The Culinary School of Fort Worth LLC ("Defendant") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and 12(b)(6). Plaintiffs Tuscan Downs, Inc., and Walter and Becky Schneider ("Plaintiffs") have responded in opposition [DE-18], and The Culinary School of Fort Worth, LLC ("Defendant") has replied [DE-20]. This matter is now ripe for disposition.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case arises out of a franchise agreement between the Plaintiffs and Defendant, originally contracted between the Schneiders and Defendant in June 2005. Compl. [DE-1] at ¶ 37. Defendant, The Culinary School of Fort Worth, is the franchisor of a "hands-on" food-service concept known as "Super Suppers." *Id.* at ¶ 1. The Schneiders read about this concept in an advertisement for Super Suppers in the January 2005 issue of *Entrepreneur* magazine. *Id.* at ¶ 27.

After learning about the Super Suppers opportunity, the Schneiders "investigated mulitple franchise concepts." *Id.* at ¶ 28. The Schneiders also traveled to a new "Super Suppers" store in Atlanta, Georgia, attended an informational session about "Super Suppers" offered by the President and CEO, Bill Byrd, in Fort Worth, Texas and "carefully reviewed" the Uniform Franchise Offering Circular ("UFOC") provided by Super Suppers. *Id.* at ¶ 32-38.

The Schneiders allege that Defendant assured them, through a pamphlet provided by a sales representative, that the estimated start-up costs for a Super Suppers franchise was approximately $65,000.00. *Id.* at ¶¶ 30-31, Exh. A. Later, Plaintiffs were informed by CEO of Super Suppers, Bill Byrd, that the start-up cost would be between $60,000.00 and $80,000.00. *Id.* at ¶ 36. The UFOC provided to the Schneiders by Defendant estimated start-up cost at $72,200.00 - $107,700.00. Compl. [DE-1] Exh. B, p. 6. Despite the varying estimates as to cost, Plaintiffs signed the Franchise Agreement in June 2005, with plans to open their Super Suppers franchise in Raleigh, North Carolina, after paying Defendants the initial franchise fee of $20,000.00. *Id.* at ¶ 37-38. On January 27, 2006, Plaintiffs assigned all their rights and obligations under the Franchise Agreement to Tuscan Downs, Inc., the couple's corporate operating entity via a Release and Transfer Consent Agreement. *Id.* at ¶ 41; Mot. to Dismiss [DE-14], Exh. A.

Plaintiffs allege in their Complaint that their ultimate start-up costs were $221,000.00, an amount they allege is substantially higher than any estimate they were provided by the Franchisor. *Id.* at ¶ 44. Throughout their Complaint, Plaintiffs also allege other, various misrepresentations by Defendant. Plaintiffs allege that these

2

misrepresentations led to the unavoidable closing of their Raleigh Super Suppers franchise in September 2007. *Id.* at ¶ 83.

Plaintiffs Schneiders and their corporate entity, Tuscan Downs, Inc., brought this Complaint on November 26, 2008, alleging violations of North Carolina's Unfair and Deceptive Trade Practices Act, violations of Texas's Unfair and Deceptive Trade Practices Act, Negligent Misrepresentation, Common Law Fraud, Breach of the Franchise Agreement, and included a demand for a Trial by Jury. *See* Compl. [DE-1].

On January 20, 2009, Defendant filed its instant Motion to Dismiss [DE-13] and Memorandum in Support [DE-14]. On March 11, 2009, Plaintiffs filed their Memorandum in Opposition to the Defendant's Motion to Dismiss [DE-18], and on March 23, 2009, Defendant's filed their timely reply. On that date, these motions were submitted to the undersigned for ruling.

## II. STATEMENT OF THE CASE

Defendant's Motion to Dismiss rests on three grounds, pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(3) for improper venue based on a forum selection clause contained in the Release and Consent to Transfer Agreement and 12(b)(6) for failure to state a claim upon which relief may be granted. Because the court finds the Defendant's argument regarding the forum selection clause meritorious, it will limit its analysis to the applicable law regarding the Defendant's argument that venue in the Eastern District of North Carolina is improper.

The Defendant asserts that this case should be dismissed pursuant to a valid and mandatory forum selection clause contained in the Release and Consent to Transfer Agreement ("Release") requiring any suit arising out of the Release, or pertaining to its

3

enforceability to be brought in Tarrant County, Texas. Memo. in Supp. [DE-15], Exh. A, p. 4. Plaintiffs contend that the forum selection clause is not applicable because their claims arise out of the Franchise Agreement and not the Release, and that the forum selection clause in the Franchise Agreement merely is optional, not mandatory. Also, in their Response to the Motion to Dismiss, Plaintiffs assert for the first time that the Release was procured by fraud, and therefore, unenforceable. Response [DE-19], p. 1. The Defendant argues, however, that this case cannot be decided without construing the Release, which is offered by the Defendant as a complete bar to the Plaintiffs claims in the Complaint. Defendant argues, therefore, that the forum selection clause in the Release requires this case, and all the Plaintiffs' claims, dismissed for refiling in the appropriate, agreed upon, forum.

### III. ANALYSIS

#### A. The Court Properly Considers the Evidence Outside the Pleadings Under Defendant's Motion to Dismiss for Improper Venue

A motion to dismiss based on a forum-selection clause should be treated as a motion to dismiss on the basis of improper venue under Rule 12(b)(3). *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 210 (4th Cir. 2007)(citing *Sucampo Pharms, Inc., v. Atellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). Plaintiffs allege, however, that because the Release was not attached to the Complaint, it should not now be considered by the court, or if it is considered, the Motion to Dismiss should be converted into a motion for summary judgment pursuant to Rule 56. The court does not agree.

4

As the Fourth Circuit has noted,

> [t]reating a motion to dismiss based on a forum-selection clause under Rule 12(b)(3) avoids the logistic and theoretical intricacies of utilizing 12(b)(1), *allows the court to freely consider evidence outside the pleadings,* unlike under a 12(b)(6) motion, and is more consistent with the Supreme Court's treatment of such clauses.

*Sucampo Pharms, Inc. V. Astellas Pharma, Inc.,* 471 F.3d 544, 550 (4th Cir. 2006) (internal citations omitted)(emphasis added).

Therefore, because the court properly construes the Defendant's Motion to Dismiss based on the forum selection clause as a motion to dismiss for improper venue under 12(b)(3), it is permitted to consider evidence outside the pleadings, including the Release offered by Defendant in the instant case.

Furthermore, a court may consider evidence outside the pleadings when it is incorporated by reference into the Plaintiffs' complaint. *Dorsey v. Portfolio Equities,* 540 F.3d 333, 338 (5th Cir. 2008) In this case, as stated previously, the Plaintiffs, in their own complaint, incorporated the Release by reference, by referring to their assignment of all rights and obligations to Tuscan Downs, Inc., on January 27, 2006. Compl. [DE-1] ¶ 41. Although the Plaintiffs dispute the enforceability of the Release, they do not dispute its existence or its desirable affect (for the Schneiders) that the signing of the Release extinguished the Schneiders individual liability for their franchise operation. *Id.* Accordingly, the court now properly considers the enforceability of the forum selection clause included in the Release. *See Dorsey,* 540 F.3d at 338 ("Generally a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

5

## B. Enforceability of the Forum Selection Clause

In a diversity case, federal law governs the enforceability of forum selection clauses, *Stewart Org., Inc. v. Ricoh Corporation*, 487 U.S. 22, 32 (1988), while the enforceability of the contract itself is a matter of state law. *Robinson v. Ladd Furniture, Inc.*, 1993 U.S. App. LEXIS 14252 *7 (4th Cir. June 13, 1993) ("the determination of the enforceability of a venue provision for purposes of a Rule 12(b)(3) motion is a matter of federal law and the enforceability of a contract is a matter of state law.") (citing *Manetti-Farrow, Inc. V. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)). Forum selection clauses are considered prima-facie valid, carrying a "strong presumption of enforceability." *Haynesworth v. The Corporation*, 121 F.3d 956, 966 (5th Cir. 1997). The burden to overcome the presumption of validity is on the party who seeks to see the case adjudicated in a forum other than the forum selected in the clause. To overcome the presumption of validity, the party disputing the applicability of the clause must demonstrate that the enforcement of the clause would be unreasonable under the circumstance. *Mitsui & Co. (USA) v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997).

Forum selection clauses are considered unreasonable only if 1) "the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching;" 2) the complaining party "will for all practical purposes be deprived of his day in court" because litigation in the selected forum would be gravely inconvenient; 3) the "fundamental unfairness of the chosen law" would deprive the plaintiff of a remedy; or 4) enforcing the clause would violate a strong public policy. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *See also, Haynesworth*, 121 F.2d at 963 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). As a result, forum

6

selection clauses are given controlling weight in all but the most exceptional cases. *Stewart*, 487 U.S. at 33.

As to the first prong, fraud or overreaching, Plaintiffs do not allege in their Complaint that the procurement of the Release was the product of fraud.[1] They do, however, agree that they assigned all of their rights and obligations under the Franchise Agreement to their corporate entity, Tuscan Downs, in January of 2006. Compl. [DE-1] ¶ 41. The mechanism through which this assignment and release occurred was the Release and Consent to Transfer agreement which contains the forum selection clause now at issue. Mem. in Supp. Mot. Dismiss [DE-14] Exh. A.[2] After the Defendant moved to dismiss based on the forum selection clause contained in the Release, the Plaintiffs responded in opposition that the Release was the product of fraud.

As stated above, the Plaintiffs have the burden to invalidate the otherwise presumptive validity of the forum selection clause. Regarding allegations of fraud and the enforceability of the forum selection clause, the Supreme Court stated that a "dispute arising out of a transaction [ ] based on an allegation of fraud" does not mean that the forum selection clause is unenforceable." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, n. 14. (1974)(citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13

---

[1] Plaintiffs allege fraud in the inducement in the signing of the Franchise Agreement, but do not allege in their complaint fraud related to the Release or the signing thereof. Compl. [DE-1] ¶¶ 117-123.

[2] Plaintiffs allege that the Scnheiders originally wanted to sign the Franchise Agreement in their capacity as officers of Tuscan Downs, but the Defendant would not allow it. Rather, the Defendant informed them that they could assign those rights at a later time. When the Defendant offered the Schneiders the option of assigning the rights and obligations to Tuscan Downs through the Release, the Plaintiffs agreed.

7

(1972)). In other words, "[a]lthough the plaintiff alleges that he was induced to [sign the release] by misrepresentation, the plaintiff does not allege that the inclusion of the forum selection clause in the [Release] was the product of misconduct." *Huffington v. T.C. Group, LLC et. al*, 685 F. Supp. 2d 239, 242 (D. Ma. 2010).

Therefore, although the Plaintiffs "vigorously dispute the enforceability of the Release," Memo. in Opp. [DE-18] p. 7, because they do not offer any evidence that the inclusion of the forum selection clause itself in the Release was procured by fraud or overreaching, they fail to meet their burden of proving the clause invalid on those grounds.[3] *See Huffington*, 685 F. Supp. 2d at 242 (The forum selection clause is unenforceable only when the "*inclusion of that clause in the contract* was the product of fraud or coercion.") (emphasis in original); *See also, Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (To have a forum-selection clause disregarded under the first prong, the party must show that alleged fraud induced the party to agree to inclusion of the clause in the contract.) (citing *Moses v. Bus. Card Express*, 929 F.2d 1131, 1138 (6th Cir. 1991)).

As to the second prong, whether the Plaintiffs would be deprived of their day in court, "because of the grave inconvenience or unfairness of the selected forum," the Plaintiffs have presented no evidence. *See Allen*, 94 F.3d at 928. The court notes, however, that in order to successfully challenge the clause under this prong, the party

---

[3] Plaintiffs also offered an Affidavit of Walter Schneider, attached to their Response in Opposition to the Defendant's Motion to Dismiss. [DE-18], Exh. A. Although Mr. Schneider alleges he felt cornered into signing the Release in order to relieve his and his wife's individual liability for their franchise, his affidavit, however, does not allege fraud in the inclusion of the forum selection clause contained in the Release.

8

must show that "the specified forum is so seriously inconvenient, that he would be deprived of an opportunity to participate in the adjudication." *Mercury Coal & Coke, Inc., v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 317 (4th Cir. 1982). There is no evidence from the record available to the court, nor have Plaintiffs argued that litigation in the specified forum of Texas would deprive the parties of an opportunity to participate in the adjudication.

The third prong of the *Allen* test, the "fundamental unfairness of the chosen law may deprive plaintiff of a remedy," concerns the choice of law provision rather than the forum-selection clause, and neither party disputes or argues that Texas state law would deprive Plaintiffs of a remedy. *See Allen*, 94 F.3d at 928. Because Plaintiffs have not argued this factor, and because the court is unaware of a Texas state law which would deprive the Plaintiffs of a remedy, the Plaintiffs have not met their burden as to this factor to overcome the presumptive validity of the forum selection clause.

The fourth and final prong of the *Allen* test, whether the forum selection clause violates or contravenes public policy, again, was not an issue raised or argued by the Plaintiffs in their pleadings. The court notes, however, that while it is unclear from the record where either the Franchise Agreement or the Release was signed and agreed to by the parties, North Carolina law prohibits any agreement entered into in the state which purports to fix the forum for the parties' future litigation or arbitration in a location outside of North Carolina. N.C. Gen. Stat. § 22B-3.

The fact that the Release may have been executed in North Carolina, however, is simply one factor in this court's analysis, which, as stated, is governed by federal, not state law. *James C. Greene Co. v. Great Am. E & S Ins. Co.*, 321 F. Supp. 2d 717, 721

9

(E.D.N.C. 2004) ("The [Stewart] Court admonished that the fact that a forum selection clause violated the public policy of the forum is just a factor in a multi-factor analy[sis], but not a dispositive one.") (quoting *Stewart*, 487 U.S. at 32); *Cable-La, Inc. v. Williams Commc'ns, Inc.*, 104 F. Supp. 2d 569, 576 (M.D.N.C. 1999). Thus, even if it were applicable, the state statute would not trump the other factors discussed previously, all of which favor enforcement of the forum selection clause.[4]

For the foregoing reasons, the court finds that the Plaintiffs have failed to meet their burden to overcome the presumptive enforceability afforded to forum selection clauses under federal law. In sum, the court finds "no basis for concluding that it would be unfair, unjust, or unreasonable to hold [Plaintiffs] to [its] bargain." *The Bremen*, 407 U.S. at 18.

## C. Applicability of the Forum Selection Clause

To the extent that the Plaintiffs allege the forum selection clause in the Release should not be enforced because their claims arise out of the Franchise Agreement and not the Release, and therefore the Release is inapplicable to their claims, the court is persuaded by the Fourth Circuit's rationale in *Wells v. Entre Computer Centers, Inc.*, that the Release in this case is "all-encompassing" and necessarily covers any claim arising out of the Franchise Agreement by its own words. *Wells*, 915 F.2d 1566, 1990

---

[4] Again, the court notes that the Plaintiffs raised only one of the four factors in their pleadings in an attempt to overcome the presumptive validity of the forum selection clause under federal law. To the extent that the court has discussed the other factors without argument or evidence from the Plaintiffs, the party bearing the burden, it has done so out of an abundance of caution.

10

U.S. App. LEXIS 17682 (Dec. 4, 1990) *10-11. Specifically, the Release at issue in this case reads (in part):

> Franchisee and Corporation shall indemnify and hold Super Suppers harmless against any and all taxes, suits, expenses, causes of action, liability, damages, and all claims and demands of any type whatsoever arising out of the Franchise Agreement: operation of the Franchisee's business as a Super Suppers franchisee in the Territory; the enforcement of this Agreement and the terms herein; claims by any other person asserting an interest in the Franchise Agreement; and the payment of Franchisee's other obligations, costs, legal expenses and other expenses arising from or in connection with any suit, proceeding or claim incident to any of the foregoing.

Memo. in Supp. [DE-15] Exh. A, Release at p. 3, Section 5. *See Wells* at * 13. The Fourth Circuit's analysis in *Wells* applies here as well: "The language in the release[] is the all-encompassing boilerplate that lawyers have used for generations, exactly because it has proven effective. . . . [releasing the Defendant] from and against any and all claims arising out of, or incident to, the execution of, and performance of the terms, conditions, obligations and stipulations contained in, the said franchise agreement." *Id.* at 11. Accordingly, because the Plaintiffs claims arise from the Franchise Agreement,[5] the enforcement or breach thereof, those claims are within the scope of the Release, and the forum selection clause requires those claims be brought in Tarrant County, Texas. Because this court cannot transfer the case to a state court, it will dismiss without prejudice for filing in the correct forum.

---

[5] To the extent that Plaintiffs have filed tort claims related to the Franchise Agreement, the court notes that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st. Cir. 1993).

11

## IV. CONCLUSION

For the foregoing reasons, the court hereby ALLOWS the Defendant's Motion to Dismiss for Improper Venue. [DE-13]. This case hereby is DISMISSED without prejudice. The clerk of court is directed to close this case.

SO ORDERED.

This the 26th day of August, 2010.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge